UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALBERT ANTHONY GRAYER | * | CIVIL ACTION |
| VERSUS | * | NO. 23-1133 |
| WARDEN HEATH MARTIN, ET AL. | * | SECTION "P" (2) |

## REPORT AND RECOMMENDATION

Plaintiff Albert Anthony Grayer filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Tangipahoa Parish Jail Warden Heath Martin, Lieutenant Terry Lane, Master Sergeant Michael Johnson, and Sergeant Alexandria Nanni, each in an individual and official capacity.  ECF No. 1, at 1, 5.  This matter was referred to the undersigned magistrate judge for a Report and Recommendation.  28 U.S.C. § 636(b)(1)(B); E.D. La. L.R. 73.2(A).

Having considered the record, including Plaintiff's complaint, his § 1983 fact statement, *Spears* hearing testimony, and the applicable law, the undersigned enters the following findings and recommendations.

## I.    BACKGROUND

Plaintiff Grayer, an inmate at Tangipahoa Parish Jail ("TPJ"), filed this *pro se* prisoner civil rights suit under 42 U.S.C. § 1983.  Grayer alleges that Defendants Martin, Lane, Johnson, and Nanni were deliberately indifferent to his First, Fifth, Eighth, and Fourteenth Amendment rights because of the unconstitutional conditions of his confinement in the jail, including denial of basic human needs, due process, access to courts, unsanitary living conditions, and indifference to medical needs.  ECF No. 1 at 6; ECF No. 1-1, at 1-3.  Plaintiff seeks nominal and punitive damages,

implementation of and compliance with certain policies and procedures, and bedding materials and rule books for all inmates at TPJ.  ECF No. 1 at 12-13.

## A.  Factual Allegations in the Complaint (ECF No. 1)

Grayer alleges that, on August 1, 2022, he filed an administrative grievance or ARP complaint asserting that Defendants Lane, Johnson, and Nanni were deliberately indifferent to his constitutional rights because of the conditions of confinement.  ECF No. 1 at 6.[1]  After being accidentally released on August 8, 2022, Grayer was arrested on August 16, 2022.  When he returned to TPJ, he was not provided a mattress, sheet, towel, or blanket.  After five to seven days, he brought the absence of these items to the attention of Sgt. Nanni who allegedly threatened to put him in lockdown if he asked again for a mattress or bedding.  Grayer alleges that he and other inmates were forced to sleep under the stairs in the dayroom without bedding even though temperatures were so cold the windows in the dormitory were fogged.  He claims that this deprived him of sleep because he continually had to get up to move around to get warm.  *Id*. at 6.

Plaintiff further claims that Defendants Nanni and Johnson were deliberately indifferent to his serious medical condition.  He alleges that Nurse Mary Bordelon told both sergeants that Plaintiff needed a mattress and bottom bunk because of his epilepsy, but they did not provide the materials.  *Id*. at 7.  He filed a second ARP complaint with Warden Martin on August 25, 2022.  *Id*.; ECF No. 1-2 at 1.  In a response dated August 26, 2022, Defendant Master Sgt. Johnson stated that Grayer's complaint would be added to the case file for legal counsel to review.[2]  ECF No. 1 at 7; ECF No. 1-2 at 1.

---

[1] On September 16, 2022, Plaintiff wrote the Warden to demand a response to his August 1, 2022, grievance because the response deadline had expired.  ECF No. 1-3, at 1.
[2] Plaintiff's complaint mistakenly represents that the response was written on August 1, 2022.  ECF No. 1-2.

Grayer also claims that the mail procedures at the jail are inadequate, and Defendants do not provide adequate legal material for inmates to access the courts in civil or criminal proceedings. ECF No. 1, at 7. He has made multiple requests for an indigent packet with paper, writing implements, envelopes, and stamps. Grayer contends that his requests were denied, however, because indigent packages are a privilege for DOC offenders only and for those inmates who have not had an internet deposit within 90 days of the request. Plaintiff claims that he explained to Defendants Martin, Lane, Johnson, and Nanni that he has more than $1400 in debt and has been selling his meals to pay for legal materials from the commissary, but he was still not provided a packet. *Id*. at 7-8; ECF No. 1-4 at 1.

Plaintiff further claims that Defendants fail to provide notary services, there is no means to obtain copies, and carbon paper is not sold in the commissary. ECF No. 1, at 8. He also claims that Defendants conduct shakedown searches and take inmates' ink pens, which requires inmates to purchase pencils, with no accommodation for inmates who cannot afford to purchase same, and that there is no way to sharpen pencils in the jail. Grayer alleges that he submitted a grievance complaint on January 6, 2023, regarding denial of access to courts and failure to provide legal materials. *Id*.; ECF No. 1-5, at 1-2. On February 7, 2023, Grayer wrote the Warden to advise of the deadlines for response to that grievance. ECF No. 1 at 8; ECF No. 1-6 at 1.

Since filing these grievance complaints, Plaintiff contends that Defendants have continued to violate his legal and constitutional rights by refusing to abide by the jail's policies and failing to provide minimal standards of operation and management for Louisiana jails. ECF No. 1, at 8. In addition, pretrial detainees are not provided a jail rule book or written rules of conduct, and none are posted. *Id*. at 8-9. Despite this, Defendants Martin, Lane, and Johnson allow Defendant

3

Nanni to pursue criminal charges against the inmates as punishment for violating rules. *Id*. at 9. Grayer claims that he has received criminal charges from Nanni.

Grayer also claims that the administrative segregation unit known as "max" is unsanitary in violation of the Eighth and Fourteenth Amendments. He claims that the cells are filthy with old food trays and smeared feces on the toilets, which smelled and were full of waste; security officers do not make rounds except to bring food; inmates are not provided cleaning supplies, brooms, or mops; and inmates are left in the cells 24 hours per day without exercise or showers. He further alleges that inmates' laundry is not picked up and legal mail is held. He claims that the inmates in max cannot purchase commissary items, including legal materials. And, because the officers do not make rounds, Grayer contends that, on February 7, 2023, and March 4, 2023, he was removed after being found unresponsive on the floor because of seizures. In addition, Grayer contends that inmates are not given disciplinary reports before being placed in max, are not provided hearings, and released when the officials think they have done enough time in max. *Id*. at 9-10.

Grayer also claims that the food service procedures at TPJ are inadequate because Defendants fail to ensure that inmates receive and eat hot food. He alleges that the food trays are left cooling in the kitchen for hours before being distributed to inmates and that eating cold food is harmful to his health because it may cause future medical issues. Plaintiff further alleges that Defendants fail to adequately train, supervise, and discipline their officers regarding food service. The officers do not follow TPJ's procedures for calling out inmates' names during food distribution and just leave the trays in the dorms, resulting in some inmates not getting to eat and some getting two trays and causing fights among the inmates, which is a failure to protect. *Id*. at 10.

As a result of the foregoing allegations, Grayer claims that Defendants Martin, Lane, Johnson, and Nanni violated his rights and those of the other inmates at TPJ under the Fifth, Eighth,

and Fourteenth Amendments, resulting in Plaintiff's and other inmates' suffering, pain, and emotional distress. *Id*. at 10-11. Defendants Martin, Lane, Johnson, and Nanni fail to provide rulebooks to pretrial detainees but pursue criminal charges as punishment and fail to adequately train, supervise, and discipline officers or force them to follow required policy/procedure, which places inmates at substantial risk of serious harm. *Id*. at 10-11; *id*. at 12. Defendants Johnson and Nanni fail to provide inmates with basic necessities upon arrival at TPJ, fail to provide inmates with disciplinary reports and hearings and fail to provide out-of-cell exercise, commissary, and "all other things" to inmates in administrative segregation. *Id*. at 11. Finally, Plaintiff alleges that Defendants Martin and Lane witnessed and had knowledge of these illegal actions and failed to correct same, instead encouraging the misconduct. *Id*. at 12.

**B.  Reply to the Court's § 1983 Response Order (ECF No. 5)**

In his response, Grayer indicates that he pled guilty to eight counts of simple robbery on July 15, 2011. ECF No. 5, ¶ 2, at 1. He was given a 20-year suspended sentence and placed on five years of probation. He violated probation on March 9, 2012, resulting in imposition of his suspended sentence. He was released on parole on April 1, 2021. On July 8, 2022, he was arrested for unauthorized entry into an inhabited dwelling. On July 20, 2022, he was charged with introduction of contraband into the jail. On April 5, 2023, he admitted the parole violations and his parole was revoked. *Id*. at 1-2.

**C.  *Spears* Hearing Testimony**

On July 7, 2023, I conducted a video conference with Grayer. ECF No. 11. Plaintiff was sworn and testified for all purposes permitted by *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), and its progeny. The conference was electronically recorded.

During the hearing, Grayer testified that he recently obtained a binder from a fellow inmate containing the 2023 TPJ policy handbook, which includes a policy mandating security rounds in administrative segregation every four hours.  He also testified that the handbook mandates an hour of recreation per day for inmates in administrative segregation.  Under the policy, inmates must receive clean laundry twice weekly and cells must be sanitized and cleaned on a regular basis.  Grayer indicated that the policy does not specify whether these provisions apply to administrative segregation or only general population, but noted that inmates do not have laundry or commissary rights while in administrative segregation.  Grayer is not aware of any TPJ policies regarding food distribution.

Grayer testified that he was accidentally released from TPJ on August 8, 2022.  On August 22, 2022, he was arrested and returned to TPJ, at which time he was not provided with a mattress, blanket, or sheet.  He was not provided with bedding materials for one and a half weeks upon reentry and the facility's cells were full, so he had to sleep on the ground in the dayroom or under the stairs.  One to two weeks later, he was assigned a cell and claimed bedding materials from another inmate who was leaving the facility.  He testified that this treatment violated TPJ's policy requiring that inmates shall be provided with a blanket, sheet, change of clothing, and towel upon arrival at the facility.

Grayer further testified that he was denied basic human needs because of TPJ's food distribution methods.  The food at the facility is often served cold.  Meals are left on trays in a dorm instead of being served to each inmate directly, resulting in him not getting a tray on two or three occasions.  In April of 2022, Grayer got into a fight when he did not get a meal tray and confronted an inmate who took two trays.  After the altercation, TPJ moved the other inmate to another dorm.  A few months later, however, Grayer was placed in the same dorm as the inmate,

who later attacked Grayer and broke his ribs.  The other inmate had not threatened him before the attack.  After this fight, Grayer was moved to a different dorm and has not interacted with that inmate since.

Grayer also testified that he suffers from and takes medication for epilepsy and that Defendants Nanni and Johnson failed to timely accommodate his seizure condition by providing proper bedding.  One day during pill call, he was speaking with Nurse Bordelon when Sgts. Nanni and Johnson walked by.  Despite prior repeated requests, Grayer still did not have a mattress or a bottom bunk at that point, so Nurse Bordelon informed the Sergeants that Plaintiff needed the bedding for his medical condition.  The Sergeants said they would get him the mattress and bottom bunk and did so four days later.

Grayer also testified about his experience in administrative segregation, where he has been sent six or seven times.  Two or three of his "max" stays followed his fights with other inmates or security guards.  On one occasion, he was sent to max when he did not get a meal tray and decided to hold all of the meal trays until someone came to speak with him.  On another occasion, he was sent to max after introducing contraband into the facility.[3]  He was first placed in max after his August 2022 reentry and stayed there for two or three days.  He has never stayed in administrative segregation for more than a week.  Once, after a fight, he was kept there for five days.

Grayer testified that there was minimal staffing in administrative segregation and that guards only made rounds  to hand out meals.  Although Plaintiff informed Sgts. Mott and Temple that he needed epilepsy medicine while in lockdown and the Sergeants indicated they would inform medical staff, Plaintiff did not receive his seizure medication while in max.  As a result,

---

[3] Plaintiff brought a cell phone into the jail.  He was not written up for the infraction but instead criminally charged. He pled guilty to introduction of contraband and was sentenced to five additional years.

security guards found Plaintiff unresponsive in his cell after a seizure at least three times.  After two or three days in max without his medication, he would have a seizure, the guards would find him, and they would send him back to his dorm in the general population.  The guards did not call for medical assistance when they found him unconscious, nor did Plaintiff request that they do so. Plaintiff also wrote a letter to Sgts. Nanni and Johnson to inform them that he was in danger when he did not receive his medications, but he never heard back.

Plaintiff also indicated that, despite TPJ's general policy requiring daily cell cleaning, administrative segregation cells were unsanitary every time he stayed there.  Styrofoam trays and leftover food littered the cell floor.  Human waste was smeared across the walls.  Plaintiff noticed clogged and overflowing toilets in other cells but was not personally housed in a cell with a clogged toilet.  Plaintiff requested cleaning supplies but never received same.  Plaintiff also testified that there was black mold in the showers and the trash cans were not taken out on a daily basis or over the weekends.

Plaintiff further testified that TPJ's inadequate legal mail procedures caused him to lose his civil case filed separately in this federal court against his former parole officer James Soileau[4] because he missed a deadline after legal mail was delivered to him too late.  Plaintiff testified that, after Judge van Meerveld recommended dismissal of his claims and Judge Barbier adopted the recommendation and ordered his claims dismissed, Plaintiff was unable to appeal the decision because he received notice of dismissal two or three days before the deadline to appeal.  Plaintiff did not send a letter to the court seeking an extension of time to file.  Plaintiff later testified that he *did* file a notice of appeal, but the case was still dismissed.

---

[4] *See* 22-cv-1501, *Grayer v. Soileau*, U.S. District Court for the Eastern District of Louisiana.

Plaintiff also testified that his lack of access to free writing supplies negatively impacted his criminal cases. He did ultimately get the supplies he needed but had to sell his food to purchase them. Plaintiff represented himself in his civil and criminal cases but had standby counsel for his criminal proceedings.

Plaintiff stated that the TPJ defendants violated his due process rights by failing to adhere to grievance policies and distribute rulebooks and filing criminal charges against him for introduction of contraband. He believes his rights were also violated when he was not provided an opportunity to be heard or appeal a decision to send him to administrative segregation but acknowledges that he was never sent to max without cause.

Plaintiff named Warden Heath Martin and Lieutenant Terry Lane as defendants because they oversee the whole facility and are responsible for its employees. He confirmed that neither Martin nor Lane had any direct or personal involvement in any of the issues raised, including the failure to provide a mattress or indigent legal mail supplies, the unsanitary conditions in the administrative segregation cell, and the distribution of food.

Plaintiff also named Sgts. Nanni and Johnson in their supervisory capacity because they must ensure the officers below them follow policy. Neither Nanni nor Johnson had any involvement with the distribution of food. However, both Defendants were involved with the mattress issue because they had the key to the warehouse where mattresses were stored, Nanni indicated she would provide Plaintiff with a mattress, and Johnson was with Nanni when she walked past Plaintiff during pill call. Neither Nanni nor Johnson had a direct role in security rounds or cleaning administrative segregation cells.

Grayer has filed three or four grievances with the jail. As he understands it, the grievance process has three steps—(1) send a written complaint to the warden, (2) receive a response from

the warden, and (3) appeal the response.  Inmates may then file suit if not satisfied with the result.

Plaintiff filed a grievance about the lack of a mattress and blanket but received no response.  He

also filed a complaint about the lack of sanitary conditions and other issues in administrative

segregation.  Sgt. Johnson issued a response indicating the grievance would be added to Grayer's

file and reviewed by counsel, but Plaintiff never received a response from legal counsel.  He also

filed complaints about mail procedures and food distribution but received no response to either.

## II.    LEGAL STANDARDS

As a prisoner seeking redress from an officer or employee of a governmental entity,

Grayer's Complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[5]  Because

he is proceeding *in forma pauperis*, the Complaint is also subject to screening under § 1915(e)(2).

Both §§ 1915(e)(2)(B) and 1915A(b) provide for sua sponte dismissal of a complaint, or any

portion thereof, if it is frivolous or malicious, fails to state a claim upon which relief may be

granted, or seeks monetary relief against a defendant who is immune from such relief.

### A.    Statutorily Required Screening

As soon as practicable after docketing, the court must review a prisoner's § 1983 complaint

for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a claim.[6]  A

claim is frivolous if it "lacks an arguable basis in law or fact."[7]  A claim lacks an arguable basis in

law if it is "based on an indisputably meritless legal theory, such as if the complaint alleges the

violation of a legal interest which clearly does not exist."[8]  A factually frivolous claim alleges only

---

[5] *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998) (per curiam).

[6] 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin*, 156 F. 3d at 579-80.

[7] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994) (citation omitted).  The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  *Macias v. Raul A.(Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

[8] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . . [or] rise to the level of the irrational or wholly incredible . . . ."[9]  A court may not dismiss a claim simply because the facts are "unlikely."[10]

A complaint fails to state a claim on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in the complaint are true, even if doubtful.[11]  The Rule 12(b)(6) analysis is generally confined to a review of the complaint and its proper attachments.[12]  The Fifth Circuit has summarized the standard for Rule 12(b)(6):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."[13]

"[W]hen evaluating a motion to dismiss under Rule 12(b)(6), a court must accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff."[14]  Thus, the court should assume the veracity of all well-pleaded allegations, viewing them in the light most

---

[9] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

[10] *Id.*

[11] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[12] *Walch v. Adjutant Gen.'s Dep't*, 533 F.3d 289, 293 (5th Cir. 2008) (citation omitted).

[13] *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and quoting *Twombly*, 550 U.S. at 544).

[14] *Id.* at 803 n.44 (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (internal quotations omitted)); *accord Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 618 n.1 (5th Cir. 2015) (citing *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014)); *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340 (5th Cir. 2011) (quoting *Elsensohn v. St. Tammany Par. Sheriff's Ofc.*, 530 F.3d 368, 371 (5th Cir. 2008) (quoting *Iqbal*, 556 U.S. at 696); *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 n.10 (5th Cir. 2017)).

favorable to the plaintiff, "'and then determine whether they plausibly give rise to an entitlement to relief.'"[15]

In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and FED. R. CIV. PROC. 12(b)(6), *Neitzke v. Williams*, 490 U.S. 319 (1989), held that a claim that is dismissed under one rule does not "invariably fall afoul" of the other.[16]  If an *in forma pauperis* complaint lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and §1915(e).[17]  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[18]

## B.  The *Spears* Hearing

The initial screening of a *pro se* prisoner's claim includes a review of the complaint and testimony from a *Spears* hearing.[19]  The purpose of a *Spears* hearing is to dig beneath the conclusory allegations of a *pro se* complaint to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.[20]  "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."[21] The information elicited at such an evidentiary hearing is in the nature of an amended complaint or more definite statement under Rule 12(e).[22]  The testimony from the *Spears* hearing will

---

[15] *Jabary v. City of Allen*, 547 F. App'x 600, 604 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 664); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

[16] *Moore*, 976 F. 2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d)) (current version at 28 U.S.C. § 1915(e)).

[17] *Id*.

[18] *Id*.

[19] *Spears*, 766 F.2d at 180 (5th Cir. 1985) (affirming magistrate court's dismissal of prisoner's claim based on complaint and evidentiary hearing).

[20] *Id*.

[21] *Davis*, 157 F.3d at 1005–06.

[22] *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (citing *Spears*, 766 F.2d at 181–82); *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990).

supersede the allegations of the plaintiff's complaint.[23] "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."[24]

The court may make only limited credibility determinations in a *Spears* hearing and may consider and rely on documents as additional evidence if they are properly identified, authentic, and reliable.[25] "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents."[26]

## III.    LAW AND ANALYSIS

### A.    Required Elements of a § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[27]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails."[28]

A plaintiff must satisfy three elements to establish § 1983 liability:

(1)      deprivation of a right secured by the U.S. Constitution or federal law;

(2)      that occurred under color of state law; and

(3)      was caused by a state actor.[29]

---

[23] *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987).
[24] *Spears*, 766 F.2d at 182.
[25] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326–27 (5th Cir. 1986), *overruled on other grounds by Denton*, 504 U.S. at 25; *Wilson v. Barrientos*, 926 F.2d at 482).
[26] *Id.*
[27] 42 U.S.C. § 1983.
[28] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).
[29] *Victoria W. v. Larpenter*, 369 F. 3d 475, 482 (5th Cir. 2004) (citation omitted).

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[30] This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law.[31]  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[32]

## B.  Eight Amendment Conditions of Confinement Claims

### 1.  The Conditions in TPJ's Administrative Segregation Cells

The Constitution does not require custodial inmates to be housed in comfortable prisons, but the Eighth Amendment's prohibition against cruel and unusual punishment requires prisoners to receive "humane conditions of confinement" and adequate food, shelter, clothing, and medical care.[33]  An inmate's "challenge to a condition of confinement is a challenge to 'general conditions, practices, rules, or restrictions of pretrial confinement.'"[34]  To establish a conditions of confinement claim under the Eighth Amendment, Plaintiff must establish (1) that the deprivation was sufficiently serious and (2) that the prison official possessed a sufficiently culpable state of mind.[35]  A sufficiently serious act or omission must result in denial of the "minimal civilized measure of life's necessities."[36]  For a failure to prevent harm claim, an inmate must show that the conditions posed a substantial risk of serious harm.[37]  The second requirement, the culpable state of mind, necessitates a finding that the official(s) acted with deliberate indifference to inmate

---

[30] *Harrington v. Harris*, 118 F. 3d 359, 365 (5th Cir. 1997) (citation omitted).
[31] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).
[32]  *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *accord Thibodeaux v. Bordelon*, 740 F. 2d 329, 333 (5th Cir. 1984).
[33] *Herman*, 238 F.3d at 664 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)) (internal quotations omitted).
[34] *Id*. at 463 (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996)).
[35] *Id.* (citing *Farmer*, 511 U.S. at 834).
[36] *Farmer*, 511 U.S. at 834.
[37] *Id*.

health and safety.[38]  Deliberate indifference requires a showing that the defendant officials "(1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed."[39]

"The Supreme Court has made clear that the standards against which a court measures prison conditions are 'the evolving standards of decency that mark the progress of a maturing society' and not the standards in effect during the time of the drafting of the Eighth Amendment."[40] The objective factor prong requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.[41]  There is clearly a point beyond which one's conditions of confinement are so egregious as to render them unconstitutional.[42]

The Court employs a "totality of the circumstances" test to assess Eighth Amendment claims based on prison conditions.[43]  Conditions of confinement may not establish a violation individually but may do so in combination with other conditions when those combined conditions have a mutually enforcing effect that produces the deprivation of a single identifiable human need, such as food, warmth, or exercise, for example, a low cell temperature at night combined with a failure to issue blankets.[44]

---

[38] *Herman*, 238 F.3d at 664 (citing *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1990)).

[39] *Id.* (citing *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998)).

[40] *Gates v. Cook*, 376 F.3d 323, 332–33 (5th Cir. 2004) (quoting *Estelle v. Gamble*, 429 US. 97, 102 (1976)).

[41] *Helling v. McKinney*, 509 U.S. 25, 36 (1993) ("In other words, the prisoner must show that the risk of which he complains is not one today's society chooses to tolerate.").

[42] *See, e.g.*, *Gates*, 376 F.3d at 338 (holding that confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional); *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) (stating that continual conditions of "filthy, sometimes feces-smeared cells" may be unconstitutional).

[43] *Rhodes v. Chapman*, 452 U.S. 337, 347, 363 (1981) (Prison "[c]onditions, . . . alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities").

[44] *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (citations omitted).

Even being forced to live in a filthy or unsanitary cell for some period of time, however, does not automatically violate the Constitution.[45]  "A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months."[46]  Thus, appellate courts reject § 1983 claims when the length of confinement in even filthy, overcrowded cells is of short duration.[47]  Courts in this district[48] and elsewhere[49] likewise regularly reject § 1983 claims based on prison conditions after assessing the combination of the particular conditions at issue and the length of confinement in those conditions.  Only in extreme circumstances do unsanitary conditions rise to the level of constitutional deprivation.[50]  For instance, in *Taylor v. Stevens*, 946

---

[45] *Taylor v. Stevens*, 946 F.3d 211, 219–20 (5th Cir. 2019).

[46] *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) (addressing unconstitutional punitive isolation of 4 to 11 prisoners crowded into 8' x 10' windowless cells for indeterminate time periods, with no furniture other than a source of water, a toilet that could only be flushed from outside of the cell, and mattresses that were given each night and removed each morning).

[47] *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (holding that three days in a filthy crisis management cell with blood on walls and excrement and old food on the floor was insufficient to objectively demonstrate a sufficiently extreme deprivation, particularly when plaintiff was given cleaning supplies) (citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (holding no Eighth Amendment violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell); *Shakka v. Smith*, 71 F.3d 162, 167–68 (4th Cir. 1995) (holding no Eighth Amendment injury when prisoner was given water and cleaning supplies but denied a shower for three days after having human excrement thrown on him); *Whitnack v. Douglas Cty.*, 16 F.3d 954, 958 (8th Cir. 1994) (noting the intolerable conditions lasted not more than 24 hours and, therefore, no constitutional violation was found); *Daigre v. Maggio*, 719 F.2d 1310, 1312–13 (5th Cir. 1983) (holding 10-day administrative lockdown that subjected prisoners to "dirty and filthy" mattresses, laundered blankets at most once a week or even up to three weeks, and no soap to wash hands with between using the toilet and eating meals was not sufficient to establish constitutional deprivation where some measure of hygiene was provided by available water and utensils at meals)).

[48] *See, e.g.*, *Magee v. Crowe*, No. 09-3142, 2010 WL 630011, at *8–9 (E.D. La. Feb. 19, 2010) (stating that a "short-term sanitation . . . problem, although admittedly unpleasant, does not amount to a constitutional violation" and holding that placement in isolation cell for 21 days with a hole in the floor for a toilet, which could only be flushed from outside and was flushed only once or twice a day, which backed up into the cell while prisoner was sleeping, and in which prisoner could only shower twice in those 21 days, did not constitute an extreme deprivation).

[49] *See, e.g.*, *Crowley v. Austin*, No. 18-431, 2018 WL 3381494, at *3 (W.D. La. May 29, 2018) (holding that 3 days in holding cell without a bed, running water or toilet is not sufficient to rise to the level of a constitutional violation); *Duvall v. Burns*, No. 6:15cv564, 2016 WL 7664308, at *1, *5–7 (E.D. Tex. Oct. 24, 2016) (ruling that a weekend in a cell where inmate could not take a shower or flush the toilet, but was supplied drinking water with meals, failed to satisfy the objective component for an Eighth Amendment violation); *Eady v. Head*, No. 04-0648, 2006 WL 2663776 (W.D. Tex. Sept. 15, 2006) (holding two days without shower and exposure to the foul smell of a backed-up shower did not show deliberate indifference to the plaintiff's basic human needs).

[50] *See also Gates*, 376 F.3d at 333 (5th Cir. 2004) (prisoners regularly forced to live in cells covered with "crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles" established an Eighth Amendment violation); *McCord v. Maggio*, 927 F.2d 844, 848 (5th Cir. 1991) (prisoner forced to sleep on a wet mattress "in filthy water contaminated with human waste" for ten months amounted to a violation of the Eighth Amendment); *Little v. Keirsey*, 69 F.3d 536, at *1, *5 (5th Cir. 1995) (holding that plaintiff stated claim for inhumane

F.3d 211 (5th Cir. 2019), *aff'd in part and vacated on other grounds by Taylor v. Riojas*, 141 S.
Ct. 52 (2020), the court recognized that a prisoner forced to live in two squalid cells for six days
articulated an Eighth Amendment claim.

In this case, Grayer has not alleged sufficient facts to state a plausible Eighth Amendment
claim for unconstitutional conditions of confinement. While he alleges that the administrative
segregation cells were filthy with feces smeared across the walls, Styrofoam trays and old food
littering the floor, and that he lacked cleaning supplies, he was subject to such conditions for, at
most in one instance, up to five days.

While these conditions are certainly not ideal, they do not approach the conditions in
*Taylor*. Based on the totality of the circumstances and controlling precedent, Grayer has not
demonstrated an environment that is counter to evolving standards of decency under the Eighth
Amendment, as necessary to state a claim for unconstitutional conditions of confinement.[51] Even
if he had, a prisoner's exposure to horrendous conditions of confinement alone is insufficient to
proceed on a § 1983 claim. Rather, the plaintiff must also allege that the unlawful practices or
conditions caused him harm or injury because the Prison Litigation Reform Act requires a physical

---

confinement when he alleged that, for 18 days, he was confined to a cell where the floor was constantly covered in
water, urine and excrement from an overflowing toilet in his cell; lack of windows and ventilation caused stench,
which inhibited him from eating and made him vomit, his shoes were soaked from the foul mixture, and he developed
a body rash from the extreme heat).

[51] *Compare with Burnette v. Bureau of Prisons*, 277 F. App'x 329, 331 (5th Cir. 2007) (holding that prisoner stated
an Eighth Amendment claim based on being required to share a garbage bag as toilet with mentally unstable inmate;
officers sealed cell door with tape and refused to remove bag, which emitted odor and leaked sewerage in cell); *Harper
v. Showers*, 174 F.3d 716, 719–20 (5th Cir. 1999) (reversing dismissal of claim for injunctive relief based on
allegations that weekly cell moves, often into cells that are filthy with feces-smeared in them next to psychiatric
patients who scream, beat on the metal toilets, short out the power, flood the cells, throw feces and light fires as such
conduct, depending on the facts, may qualify as deprivations of life's basic needs in violation of the Eighth
Amendment).

injury that is more than *de minimis* to recover damages under § 1983.[52]  Exposure to foul odor and

human waste is insufficient to establish the required "injury" under the PLRA.[53]

## C.  Supervisory Liability Claims- Individual Capacity

Grayer alleges that each of the defendants is liable for the actions of their subordinates

because they must ensure the officers below them follow policy.  "Personal involvement is an

essential element of a civil rights cause of action."[54]  To hold a defendant personally liable under

§ 1983, a plaintiff must establish either that the defendant was "personally involved in the acts

causing the deprivation of his constitutional rights or that a causal connection exists between an

act of [the defendant] . . . and the alleged constitutional violation."[55]  Furthermore, there is no

*respondeat superior* liability under section 1983.[56]  Thus, a supervisor cannot be held liable under

§ 1983 pursuant to a theory of *respondeat superior* simply because other defendants were in his

employ or under his supervision.[57]  Instead, a plaintiff must establish that he suffered a

constitutional violation or physical injury directly resulting from an order, policy, or directive

implemented by the supervisory officer to create vicarious liability under § 1983.[58]

---

[52] 42 U.S.C. § 1997e(e); *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005).

[53] *See Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 630-31 (5th Cir. 2003) (inmates could not recover damages from temporary exposure to "deplorable conditions" when only injury alleged was nausea from the smell of raw sewage).

[54] *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

[55] *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *accord Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008); *Kohler v. Englade*, 470 F.3d 1104, 1114-15 (5th Cir. 2006).

[56] *Carter*, 2009 WL 2390808, at *3; *see Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996) ("There is no *respondeat superior* liability under section 1983."); *accord Field v. Corr. Corp. of Am. Inc.*, 364 F. App'x 927, 929 (5th Cir. 2010); *Cox*, 281 F. App'x at 391; *Kohler*, 470 F.3d at 1114-15.

[57] *Sanders v. English*, 950 F.2d 1152, 1160 (5th Cir. 1992); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979); *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983).

[58] *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 1991); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *see also*; *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (Supervisory officials "are not liable for the actions of subordinates on any theory of vicarious liability" and will only be liable if the official "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."); *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998) (a supervisory official may be liable for the acts of a subordinate if the plaintiff can establish that the supervisor either failed to supervise or train the subordinate, that a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and the failure to train or supervise amounted to deliberate indifference).

**1.   Grayer Fails to State Plausible Claims against Warden Martin and Lieutenant Lane**

Grayer testified that he named Warden Martin and Lt. Lane as defendants because they oversee the entire facility and are responsible for its employees.  He also stated, however, that neither Martin nor Lane had any direct or personal involvement in most of the issues raised, including the failure to provide a mattress or indigent legal mail supplies, the unsanitary conditions in the administrative segregation cell, and the distribution of food.  Although each of these defendants may have served as a supervisor in some capacity, that fact alone is insufficient to render either of them liable for federal civil rights violations allegedly committed by a subordinate under strict liability or vicarious liability theories.[59]  He also fails to allege a causal connection between any act of these defendants and a constitutional deprivation or injury.

Without allegations of personal involvement, Grayer has failed to state a claim against Warden Martin or Lt. Lane, thus his claims against them in their individual capacities should be dismissed as frivolous and/or for failure to state a claim upon which relief can be granted.[60]

**2.   Sergeants Nanni and Johnson**

Grayer has not alleged that Sgts. Nanni and Johnson were personally involved in the distribution of the food to inmates or aware (other than through the grievance process) of any other alleged conditions he challenges except the mattress and bedding issue and his additional criminal charges.  Indeed, Grayer testified that neither sergeant had any involvement with the distribution of food, security rounds, or cleaning administrative segregation cells.  However, both Defendants were involved with the mattress issue because they had the key to the warehouse where mattresses were stored, Nanni indicated she would provide Plaintiff with a mattress, and Johnson was with

---

[59] *Carter v. Strain*, No. 09-3401, 2009 WL 2390808, at *3 (E.D. La. July 31, 2009); *see Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996) ("There is no *respondeat superior* liability under section 1983.").
[60] 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1); *see also* FED. R. CIV. P. 12(b)(6).

Nanni when she walked past Plaintiff during pill call.  Likewise, both sergeants were personally aware of  Plaintiff's need for medical treatment in administrative segregation because Plaintiff wrote them letters asking to be medicated while in max.

### i. Grayer States a Plausible Claim for Medical Indifference

Plaintiff claims that, upon his return to jail in August of 2022, he was not provided a mattress and had to sleep on the floor in the dayroom, causing him sleep deprivation.  The denial of a mattress for a few days does not constitute a deprivation of the minimal civilized measures of life's necessities.[61]  Moreover, "[e]ven prison regulations that infringe a prisoners constitutional rights are upheld if they are reasonably related to a legitimate penological interest."[62]

However, in this case, Grayer testified that he was denied a mattress and bottom bunk for one to two weeks after he returned to the facility.  In response to a verbal request for the bedding, Nanni threatened to send Grayer to lockdown if he asked again.  Even after Nurse Bordelon told Nanni and Johnson that Grayer needed a mattress and bottom bunk because of his epilepsy, it took multiple days for him to receive these accommodations for his medical condition.

A prisoner, whether pretrial or convicted, may succeed on a claim under § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to

---

[61] *Phillips v. East*, 81 F. App'x 483, 485 (5th Cir. 2003); *see also*, *Fischer v. Ellegood*, 238 F. App'x 428, 2007 WL 1624315, at *4 (11th Cir. 2007) (sleeping on floor for five days does not violate Eighth Amendment); *Stephens v. Cottey*, 145 F. App'x 179, 2005 WL 1971700, at *1 (7th Cir. 2005) (no Eighth Amendment violation when prisoner slept without a mattress on a metal bedframe for three days and on the floor with no bedframe for five days); *Grissom v. Davis*, No. 02-1916, 2003 WL 343248, at *2 (6th Cir. Feb. 12, 2003) (seven days without mattress, sheets or blanket was not deprivation of basic human needs when it did not cause serious harm); *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 84 (8th Cir. 1996) (sleeping on concrete slab without mattress or blanket for four days in cell ten feet from exterior door during winter did not deny plaintiff minimal civilized measures of life's necessities); *Schroeder v. Kaplan*, No. 93-17123, 1995 WL 398878, at *2 (9th Cir. July 7, 1995) (sleeping on floor without mattress for four weeks does not violate Eighth Amendment).

[62] *Phillips*, 81 F. App'x at 485 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Talib v. Gilley*, 138 F.3d 211 (5th Cir. 1998)).  The unavailability of resources also has often been considered a legitimate penological interest.  *See, e.g.*, *Baranowski v. Hart*, 486 F.3d 112, 122 (5th Cir. 2007) (collecting cases and noting that unavailability of resources has been held a legitimate penological interest in the context of inmate dietary requests and religious services).

serious medical needs" by prison officials or other state actors.[63]  Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."[64]  "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"[65]

Grayer further claims that he informed various prison officials, including Sgts. Mott and Sebastian Temple, that he had epilepsy and needed medication while in administrative segregation. Grayer also wrote letters to Sgts. Nanni and Johnson regarding his need for medication, emphasizing the danger of going without them while in max.  Despite these efforts, Grayer received neither his seizure medications nor visits by medical staff during his time in administrative segregation.  As a result, he had seizures that left him unconscious on three or four occasions.  Due to infrequent security rounds, Grayer remained unconscious for indefinite periods of time, after which guards eventually discovered him and sent him back to the general population. They did not bring medical staff to treat him or provide him with medical treatment after finding him unconscious.  Plaintiff instead resumed taking medication on his own accord when he returned to the dorm.

Based on the foregoing allegations, Plaintiff has alleged plausible claims of medical indifference against Defendants Nanni and Johnson in their individual capacities.  Likewise, although he did not name them in his original complaint, Plaintiff alleged plausible claims of

---

[63] *Estelle*, 429 U.S. at 106.
[64] *Id*. at 104-05.
[65] *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quoting *Domino*, 239 F.3d at 756).

medical indifference against Sgts. Mott and Temple in their individual capacities through his *Spears* testimony, which serves to amend the allegations of his complaint.[66]

### D. Grayer Fails to State Plausible Official Capacity Claims

Grayer names Warden Martin, Lt. Lane, Sgt. Johnson, and Sgt. Nanni as defendants in their official capacities but has not identified any particular one as a policymaker. His claims focus on challenges to (or failure to abide by) the jail's policies for food service, legal supplies, disciplinary proceedings, and medical care. To the extent he agrees that the jail has policies that are adequate but just not followed or enforced, the failure to follow the jail's policies alone is not a constitutional violation.[67]

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."[68] The United States Fifth Circuit Court of Appeals has explained municipal liability:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.[69]

"A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[70] Rather, he must identify the policy or custom which allegedly

---

[66] *Riley,* 828 F.2d at 307.
[67] *Barker*, 277 F. App'x at 482.
[68] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).
[69] *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citations and quotation omitted).
[70] *Colle v. Brazos Cnty.*, 981 F.2d 237, 245 (5th Cir. 1993); *see also Wetzel v. Penzato*, No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009).

caused the deprivation of his constitutional rights.[71]  Additionally, "the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority."[72]

Thus, municipal liability under § 1983 requires proof of three elements: a policymaker, an official policy, and a violation of constitutional rights.  The policy must be the "moving force" behind the violation.[73]  Also, "isolated unconstitutional actions by municipal employees will almost never trigger liability."[74]  If there is no constitutional violation, the *Monell* claim fails.

In light of Plaintiff's failure to identify a policymaker or official policy, he has failed to state a plausible claim against any of the Defendants in their official capacity.

## E.  **Frivolous Claims**

### 1.  **No Timely Response to Grievances and Failure to Follow Jail Policy**

Grayer claims that Warden Martin failed timely to respond to his August 1, 2022, grievance complaining about the general conditions of his first stay in the jail (Exhibit A) and his January 26, 2023 grievance complaining about access to the courts and legal materials (Exhibit D).  He also claims his constitutional rights were violated when he did not receive a copy of the facility's rulebook.  However, an inmate is not entitled to an effective grievance process.[75]  In addition, there is no constitutional violation from Defendants' mere failure to comply with their own jail policies

---

[71] *See, e.g., Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003); *Wetzel,* 2009 WL 5125465, at *3.

[72] *Peterson v. City of Fort Worth,* 588 F.3d 838, 848 (5th Cir. 2009).

[73] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).  "[I]solated unconstitutional actions by municipal employees will almost never trigger liability." *Id*. at 578 (citations omitted).

[74] *Id*. (citations omitted).

[75] *Bonneville v. Basse*, 536 F. App'x 502, 503 (5th Cir. 2013) (citing *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005)); *Propes v. Mays*, 169 F. App'x 183, 184-85 (5th Cir. 2006) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor) (citing *Geiger*, 404 F.3d at 373-74); *Comeaux v. Stalder*, 300 F. App'x 306, 308 (5th Cir. 2008) (challenges to administrative remedy procedures used to process administrative grievances fails to implicate a constitutional right).

and rules where there is no constitutional right imposed upon or physical harm alleged.[76]
Likewise, even if Defendants Martin, Lane, Johnson and Nanni did violate a TPJ policy by failing
to give Plaintiff a copy of the rulebook, such conduct fails to rise to the level of a constitutional
violation.[77]

### 2.  Verbal Threats

Grayer claims that when he complained to Sgt. Nanni about not having a mattress and
bedding, she threatened to put him in lockdown if he asked again for a mattress or bedding.
However, unkind words and even verbal threats made by jail officials do not violate the
Constitution.[78] His claim against Sgt. Nanni on this ground is patently frivolous.

### 3.  Additional Criminal Charges

Grayer also alleges that it was unconstitutional for Sgt. Nanni to charge him with
introduction of contraband as "punishment."  However, possession of contraband in jail is a
criminal offense under Louisiana law.  Specifically, LA. REV. STAT. ANN. § 14:402 provides:

> B. No person shall possess contraband upon the grounds of any state correctional
> institution.
> ....
> D. "Contraband" as used herein means:
> ....
> (9) Any telecommunications equipment or component hardware, including but not
> limited to cellular phones, pagers, beepers, global satellite system equipment,

---

[76] *Barker v. Owens*, 277 F. App'x 482 (5th Cir. 2008) (failure to follow its own prison rules, regulations or procedures
does not constitute a due process violation, without an independent constitutional violation) (citing *Giovanni v. Lynn*,
48 F.3d 908, 912-13 (5th Cir. 1995)); *Ruiz v. LeBlanc*, 643 F. App'x 358, 364 (5th Cir. 2016) (citing *Myers v.
Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)); *Richardson v. Thornton*, 299 F. App'x 461, 463 (5th Cir. 2008) (citing
*Myers*, 97 F.3d at 94).
[77] *See Eaton v. Magee*, No. 10-112, 2012 WL 2459398, at *6 (S.D. Miss. June 27, 2012) (citing *Hernandez v. Estelle*,
788 F.2d 1154, 1158 (5th Cir. 1986) (holding that the mere failure of a prison official to follow the prison's own
regulation or policy does not amount to a constitutional violation); *McGowan v. Peel*, No. 06-659, 2007 WL 710154,
at *1–*2 (S.D. Miss. March 6, 2007).
[78] *Watson v. Winborn*, No. 02-10984, 67 F. App'x 241, 2003 WL 21108479, at *1 (5th Cir. Apr. 21, 2003) (affirming
determination that plaintiff had no actionable claim for alleged verbal threats by prison guards) (citation omitted);
*Robinson v. Stephens*, No. 14-701, 2017 WL 4112363, at *11 (E.D. Tex. Aug. 9, 2017) ("The use of words, no matter
how violent, does not comprise a section 1983 violation.") (citing *Bender v. Brumley*, 1 F.3d 271, 274 n.3 (5th Cir.
1993); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)), *R. & R. adopted by* 2017 WL 4101676 (E.D. Tex.
Sep. 14, 2017).

subscriber identity module (SIM) cards, portable memory chips, batteries, and chargers, whether or not such equipment may be intended for use in planning or aiding an escape or attempt to escape from any institution, unless authorized by the warden of the institution.

....

G. (1) Whoever violates any provision of this Section shall be fined not less than five hundred dollars and not more than ten thousand dollars and shall be imprisoned with or without hard labor for not more than ten years. ...

(2) If the person who violates any provision of this Section is incarcerated in the state correctional institution or the municipal or parish prison or jail in which the contraband is introduced, possessed, or sent from, the sentence imposed pursuant to Paragraph (1) of this Subsection shall be served consecutively to the sentence the person was serving at the time the violation of this Section occurred.

LA. REV. STAT. ANN. § 14:402. Grayer testified that he possessed a cell phone and pled guilty to the contraband charge, after which he was sentenced to five additional years of imprisonment.

Grayer has offered no information beyond his conclusory assertion that the charge was brought as "punishment," rather than as enforcement of applicable jail rules and law prohibiting inmates from possessing cellular phones in prison. Although Grayer asks that "Nanni cease placing criminal charges on offenders as punishment," the only instance of additional charges alleged involves his admitted possession of contraband. Accordingly, this claim is patently frivolous.

### 4. Cold Meals

Grayer claims that TPJ officials fail to ensure that he receives hot meals and instead allow the meals to sit in the kitchen before distribution. However, the Constitution does not require that a prisoner receive hot food, only that the jail provide an inmate with "sufficient nutritional value to preserve health."[79] Because of this, Grayer would be unable to prove a *Monell* claim, or failure to supervise and train claim, since the manner of food distribution does not violate a protected

---

[79] *Pitt v. Weaver*, No. 15-360, 2015 WL 2452348, at *4 (E.D. La. May 21, 2015) (Order adopting R. & R.) (quoting *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996); *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)); *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *Green v. Farrell*, 801 F.2d 765, 770 (5th Cir. 1986) (quoting *Smith*, 553 F.2d at 380).

right.[80]  Further, even if the guards are not following the jail's policy on food distribution, that failure is not a constitutional violation where there is no constitutional right imposed upon or physical harm alleged.[81]

### 5. Denial of Access to Courts

Grayer uses the phrase "access to courts" in connection with his claim that he has not been provided the DOC indigent inmate packet, does not have enough money to keep buying supplies, and has no means of sharpening pencils.  This, however, is insufficient to state a claim of denial of access to the courts.

Prisoners, including pretrial detainees,[82] have a fundamental constitutional right of meaningful access to the courts.[83]  "Prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'"[84]  The right to access courts is ancillary to an underlying nonfrivolous claim or cause of action, which "is an element that must be described in the complaint, just as allegations must describe the official acts frustrating the litigation."[85]  Thus, a prisoner's right to access courts is limited to allowing opportunities to file nonfrivolous claims challenging their convictions or conditions of confinement.[86]

---

[80] *Martinez v. City of North Richland Hills*,  of Appeals, 846 F. App'x 238, 244-45 (5th Cir. Feb. 25, 2021) (if there is no underlying constitutional violation by an individual, the supervisory claim fails) (citing *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006).

[81] *Barker*, 277 F. App'x at 482.

[82] *Wetzel v. Strain*, No. 9-7048, 2010 WL 744993, at *3 (E.D. La. Feb. 26, 2010) (citations omitted).

[83] *Mendoza v. Strickland*, 414 F. App'x 616, 618 (5th Cir. 2011) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *abrogated by Lewis v. Casey*, 518 U.S. 343 (1996)).

[84] *Id.* (quoting *Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 825)).

[85] *Id.* (internal quotations omitted) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

[86] *Galloway v. Nesbit*, No. 20-170, 2020 WL 6704568, at *1 (N.D. Miss. Nov. 13, 2020) (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999)).

To provide meaningful access to courts, prisons must provide the legal materials and "tools . . . that the inmates need in order to attack their sentences, directly or collaterally."[87]  The right does not guarantee any particular methodology, and prisons have "considerable" discretion in providing legal resources to prisoners.[88]  Prisoners who allege their right to access courts has been violated must also demonstrate actual injury, such as loss of a motion, the loss of a right to commence, prosecute or appeal in a court, or substantial delay in obtaining a judicial determination in a proceeding,[89] resulting from denial of access to courts.[90]  "[A]n inmate cannot demonstrate the requisite actual injury for an access-to-courts claim 'simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense[,]'" rather a prisoner must establish that his efforts to pursue a nonfrivolous action were hindered.[91]  Without a showing of this actual injury, a Plaintiff lacks standing to pursue a claim of denial of access to the courts.[92]

Outside of providing a law library or legal assistance programs, a prisoner's right to access courts is satisfied when the prisoner has legal counsel for the underlying claim or cause of action for which he asserts he cannot pursue or defend.[93]  Appointment of counsel satisfies a pretrial

---

[87] *Lewis*, 518 U.S. at 355 (internal quotations and citation omitted).

[88] *James v. Mendoza*, No. 8-253, 2008 WL 4858372, at *4 (S.D. Tex. Nov. 10, 2008) (citing *Lewis*, 518 U.S. at 356); *Jones*, 188 F.3d at 325).

[89] *Galloway*, 2020 WL 6704568, at *1 (citing *Oaks v. Wainwright*, 430 F.2d 241 (5th Cir. 1970)).

[90] *Id.*  (citing *Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993); *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987)).

[91] *Brantner v. Freestone Cnty. Sheriff's Office*, No. 20-50528, 2022 WL 2077960, at *3 (5th Cir. 2022) (citing *Lewis*, 518 U.S. at 351; *DeMarco v. Davis*, 914 F.3d 383, 387 (5th Cir. 2019)).

[92] *Weathers v. Doe*, No. 05-54, 2008 WL 1924231, at *2 (S.D. Tex. Apr. 29, 2008)) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)) ("To meet the standing requirement, plaintiff 'must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief' . . . Plaintiff 'must establish that he has a personal stake in the alleged dispute and that the alleged injury suffered is particularized as to him.'").

[93] *Mendoza*, 414 F. App'x at 618–19 (affirming district court's decision that Plaintiff could not assert his right to access the courts was infringed in relation to his plea deal as he was represented by counsel in that federal case) (citing *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir. 1981) (dismissing a complaint for failure to state a claim because "[a]s long as a criminal defendant is represented by counsel, he will be able to present matters for decision to the court through motions filed by his attorney.")).

detainee's right of access to courts for criminal proceedings, and under those circumstances, a pretrial detainee is not entitled to independent access to a law library and legal materials.[94]

First, Grayer has failed to establish that these restrictions or delayed legal mail while he was in segregation interfered with his ability to pursue a non-frivolous claim or challenge his criminal proceedings.[95]  Though Grayer claims that mail delays caused him to "lose his case" against his former parole officer James Soileau,[96] the record in that case reflects that, at the pleading stage, Grayer's official-capacity claims against Soileau were dismissed without prejudice for lack of subject matter jurisdiction and his individual-capacity claims were dismissed with prejudice for failure to state a claim under FED. R. CIV. PROC. 12(b)(6).[97]  Further, despite his claim that he was unable to file an objection to the U.S. Magistrate Judge's report and recommendation of dismissal, the record reflects that Grayer filed an objection on March 17, 2023, prior to the adoption of the report and recommendation.[98]  Therefore, TPJ's restrictions on Grayer's access to writing materials did not interfere with his ability to pursue non-frivolous claims in his civil case.

Likewise, Plaintiff has failed to establish that his lack of access to free writing supplies interfered with his ability to challenge his criminal proceedings.  Further, Plaintiff had appointed counsel in his criminal matter.  Thus, Plaintiff cannot establish that temporary lack of access to his

---

[94] *Robinson v. Rapides Par. Det. Ctr.*, No. 06-0743, 2006 WL 3533142, at *2 (W.D. La. Oct. 2, 2006) (citing *Caraballo v. Fed. Bureau of* Prisons, 124 F. App'x 284, 285 (5th Cir. 2005); *Wetzel v. Strain*, No. 9-7048, 2010 WL 744993, at *3 (E.D. La. Feb. 26, 2010) (citing cases); *Mitchell v. Gusman*, No. 07-5470, 2008 WL 449650, at *3 (E.D. La. Feb. 14, 2008) (citing *Sosa v. Strain*, No. 06-9040, 2007 WL 1521441, at *6 n.8 (E.D. La. May 22, 2007); *Buckenburger v. Strain,* No. 06-5670, 2006 WL 4503353, at *3 (E.D. La. Oct. 20, 2006); *Kirkpatrick v. Daugherty*, No. 05-461, 2006 WL 2401108, at *4 (E.D. Tex. Aug. 17, 2006)); *VanHook v. Nelms*, No. 12-60, 2012 WL 3779139, at *4 (E.D. Tex. Aug. 30, 2012) (citing *Mendoza*, 414 F. App'x at 618–19; *Tarter*, 646 F.2d at 1014).

[95] *Brantner v. Freestone Cnty. Sheriff's Office*, No. 20-50528, 2022 WL 2077960, at *3 (5th Cir. 2022) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *DeMarco v. Davis*, 914 F.3d 383, 387 (5th Cir. 2019)).

[96] *See* 22-cv-1501, *Grayer v. Soileau*, U.S. District Court for the Eastern District of Louisiana.

[97] *See id.* at ECF Nos. 15-17.

[98] *See id.,* ECF No. 16, (entitled "Notice of Appeal" but construed as a timely objection to the report and recommendation).

mail while in administrative segregation prevented him from filing or caused him to lose a pending case.[99]

### 6. Placement in and Lack of Exercise during Disciplinary Segregation

Grayer complains that he was placed in disciplinary confinement but was not provided with a disciplinary write-up or a hearing on the disciplinary charge.  However, "the Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner."[100]  In addition, any challenge to a disciplinary conviction (or criminal charge as the result of a disciplinary violation) that resulted in an atypical restriction is barred by *Heck*.[101]

Also, limited out-of-cell activity does not state a constitutional violation where this restriction is not significant or atypical to implicate due process concerns and did not create an injury or health issue for the plaintiff.[102]  Accordingly, Grayer fails to state a plausible claim on either ground.

### 7. Lack of Access to Laundry in Disciplinary Segregation

Grayer asserts that his lack of access to laundry while in administrative segregation amounts to an unconstitutional condition of confinement.  "Prisoners are entitled to 'reasonably adequate' sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course

---

[99] *See Deramus v. Claiborne Par. Det. Ctr.*, No. 21-2566, 2021 WL 6427047 (W.D. La. Dec. 22, 2021) (citing *Lewis v. Casey*, 518 U.S. 343, 353-54 (1996) (quoting Wolff v. McDonnell, 418 U.S. 539, 579 (1974))).

[100] *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997); *Sandin v. Connor*, 515 U.S. 472, 481–83 (1995) (due process does not require that a prisoner be afforded the procedural mechanisms previously prescribed in *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

[101] *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (extending *Heck* to bar a prisoner's claim for money damages and declaratory relief challenging disciplinary hearing procedures); *VanBuren v. Walker*, 841 F. App'x 715, 716 (5th Cir. 2021) (recognizing *Heck* bar to "any injunctive relief" tied to habeas claim brought under § 1983); *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (citing *Edwards*, 520 U.S. at 641).

[102] *See, e.g., Rhine v. City of Mansfield*, 499 F. App'x 334 (5th Cir. 2012) (complaint of confinement in segregation resulting in loss of use of television, microwave, and hotplate failed to state a due process claim); *Field*, 364 F. App'x at 930 (affirming dismissal of condition-of-confinement claim where inmate claimed denial of recreation or exercise but did not allege physical injury or that denial was for an extended period of time).

of time."[103]  That said, courts in this circuit and elsewhere have held that the provision of clean

clothing or laundry services once a week, or even less frequently, meets constitutional standards.[104]

Plaintiff went without laundry services for a maximum of five days while in administrative

segregation.  This brief, temporary deprivation of laundry services does not constitute run afoul of

Grayer's constitutional rights, thus he fails to state a viable claim on this ground.

### 8.  Failure to Protect: Fights over Food Trays

Grayer claims that the method of placing food on a table for inmates to retrieve (rather than

calling each inmate to retrieve a tray) has resulted in fights between inmates over the food trays.

He alleges that he got into a fight with another inmate once when that inmate took two food trays,

and Plaintiff was left with none.  Grayer instigated the fight when he discovered there was no food

left for him and was subsequently sent to administrative segregation.  After the fight, the other

inmate was moved to another dorm.  A few months later, Plaintiff was placed in the same dorm

with that inmate, who subsequently attacked Plaintiff and broke his ribs.  Plaintiff concedes that

the other inmate had not threatened him before the attack.  After this fight, Plaintiff was moved to

a different dorm and has not further interacted with that inmate.

"The Eighth Amendment affords prisoners protection against injury at the hands of other

inmates."[105]  The Fourteenth Amendment extends this protection to pretrial detainees.[106]  Whether

the plaintiff is convicted or pretrial detainee, deliberate indifference is the standard of review when

---

[103] *Phelps v. Roork*, No. 19-73, 2020 WL 8299762, at *3 (E.D. Ark. June 3, 2020). (Quoting *Stickley v. Byrd*, 703 F.3d 421, 423 (8th Cir. 2013)); *see also Rast v. Ma'at*, No. 21-547, 2021 WL 3483365, at *2 (W.D. La. July 16, 2021) ("Jails must provide only reasonably adequate hygiene and sanitation conditions.") (quoting *Burton v. Cameron Cnty*., 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986)) , *R.&R. adopted*, No. 21-527, 2021 WL 3476725 (W.D. La. Aug. 6, 2021).
[104] *Id*. (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986) (when inmates could wash their clothes in sinks, there was no constitutional violation where jail stays averaged ten days) (collecting other cases); *see also Rast,* 2021 WL 3483365, at *2 (complaint of no access to running water for showers and laundry for six days failed to state a claim "of constitutional dimension.").
[105] *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted).
[106] *Hare*, 74 F.3d at 650.

prisoners claim the failure to protect.[107]   A prisoner plaintiff cannot show that a prison official showed deliberate indifference unless he can show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety."[108]   The official must have been aware of facts giving rise to an inference that a substantial risk of serious harm existed – and he must have drawn that inference.[109]   An inmate pursuing a claim for failure to protect may prove it by showing that the defendants knew of a specific threat to him but failed to take measures to protect him from it.[110]

Even in the absence of a specific threat, an inmate may prove a claim of failure to protect if he can show that he was placed in a prison environment "where terror reigns."[111]   This situation arises in a jail or prison where officials allow "a pervasive risk of harm" and "fail[] to take reasonable steps to prevent the known risk."[112]   Indeed, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."[113]   However, negligence on the part of the prison officials does not rise to the level of a § 1983 claim for deliberate indifference; nor does an official's failure to alleviate a significant risk that he should have perceived, but did not.[114]

Plaintiff's allegations do not rise to the level of a plausible claim for failure to protect. While he asserts that "security fail[s] to use the proper procedures set to feed offenders," which "often cause[s] some offenders not to eat & even fights," he has not shown that any of the

---

[107] *Id.*
[108] *Farmer*, 511 U.S. at 837.
[109] *Id.*
[110] *Id.* at 843.
[111] *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981), *overruled on other grounds by Int'l Woodworkers of Am., AFL-CIO and its Local No. 5-376 v. Champion Intern. Carp.*, 790 F.2d 1174 (5th Cir. 1986).
[112] *Stokes v. Delcambre*, 710 F.2d 1120 (5th Cir. 1983) (sheriff housed college students arrested on a non-violent misdemeanor charge with a dozen inmates charged with violent felonies – leading to the students' severe beating and rape).
[113] *Farmer*, 511 U.S. at 843.
[114] *See Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001); *Domino*, 239 F.3d at 756.

Defendants were aware of facts giving rise to an inference that a substantial risk of serious harm to Plaintiff existed and drew such an inference.  Nor has Grayer alleged that he was placed in an environment "where terror reigns." After Grayer fought with another inmate over food trays, the two were placed in separate living quarters.  Though they were later placed in the same dorm, months had passed without incident and the other inmate had not threatened him.  Plaintiff has not alleged that he reported concerns about the specific inmate.  Further, after the other inmate attacked Plaintiff, the two were once again separated and have remained in different dorms since.  Accordingly, Grayer's failure-to-protect assertion does not constitute a plausible claim for relief.

## **RECOMMENDATION**

It is **RECOMMENDED** that Albert Anthony Grayer's § 1983 claims against Defendants Warden Heath Martin and Lieutenant Terry Lane in their official and individual capacities be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e as frivolous and for failure to state a claim for which relief can be granted.

It is further **RECOMMENDED** that Grayer's § 1983 claims against Defendants Sergeants Alexandria Nanni and Sergeant Michael Johnson in their official capacities be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e as frivolous and for failure to state a claim for which relief can be granted.

It is further **RECOMMENDED** that Grayer's § 1983 claims regarding unsanitary conditions of confinement, cold food, failure to protect, lack of adherence to grievance policies, and denial of access to courts be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e as frivolous and for failure to state a claim for which relief can be granted.

It is further **RECOMMENDED** that Grayer's § 1983 claims of medical indifference against Defendants Nanni, Johnson, Mott, and Temple in their individual capacities be allowed to proceed and remain referred to the undersigned Magistrate Judge for further pretrial proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[115]

New Orleans, Louisiana, this ___7th___ day of September, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[115] *Douglass v. United Servs. Auto. Ass'n*, 79 F. 3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).